# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHL VARIABLE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff/<br>Counterclaim-Defendant, | )<br>)<br>) |
| v. | ) C.A. No.: 12-cv-319-LPS<br>)<br>) Jury Trial Demanded |
| ESF QIF TRUST, by and through its trustee,<br>DEUTSCHE BANK TRUST COMPANY, | )<br>)<br>) |
| Defendant/<br>Counterclaim-Plaintiff. | )<br>)<br>)<br>) |

**PLAINTIFF PHL VARIABLE INSURANCE COMPANY'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS DEFENDANT ESF QIF TRUST'S COUNTERCLAIMS**

Keith A. Walter (#4157)
Daniel Attaway (#5130)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
PO Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (302) 658-5614

Thomas F.A. Hetherington
Jarrett E. Ganer
EDISON, MCDOWELL & HETHERINGTON LLP
Phoenix Tower
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
Telephone: (713) 337-5580

*Counsel for Plaintiff/Counterclaim-Defendant
PHL Variable Insurance Company*

Dated: August 6, 2012

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ............................................................................................................... 2

    A.    The Trust is Not Entitled to An Advisory Opinion ................................................ 2

        1.    *CSSEL Bare Trust* is Inapposite...................................................................... 3

        2.    The Counterclaim Fails to Allege Sufficient Facts that the Policies are Valid ................................................................................ 4

    B.    The Trust's Common Law and Statutory Claims Fail ............................................ 5

        1.    The Trust Fails to Allege a Misrepresentation............................................. 5

        2.    The Trust Fails to State A Claim Under the Delaware Consumer Fraud Act ....................................................................................................... 7

        3.    The Trust Fails to Allege Facts Necessary to Support Claims for Bad Faith and Breach of the Duty of Good Faith and Fair Dealing .............. 8

        4.    Courts Cannot Enforce Illegal Contracts ...................................................... 9

        5.    The Trust Fails to Allege Damages ............................................................. 9

III.    CONCLUSION.......................................................................................................... 10

IV.    PRAYER................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Ayers v. Quillen*, No. Civ. A. 03C-02-004-RFS,
     2004 WL 1965866 (Del. Super. June 30, 2004) .............................................................. 7

*Chiarella v. U.S.*,
     445 U.S. 222 (1980) ...................................................................................................... 6

*Coleman Dupont Homsey v. Vigilant Ins. Co.*,
     496 F.Supp.2d 433 (D. Del. 2007) ................................................................................ 8

*ConAgra Foods, Inc. v. Lexington Insurance Company*,
     No. 09C-02170 FSS, 2010 WL 663746 (Del. Super. Jan. 21, 2010) ............................. 9

*CSSEL Bare Trust v. Phoenix Life Ins. Co.*,
     No 601002/09, 2011 WL 2941357 (N.Y. Sup. Ct. July 5, 2011) ............................. 3, 4

*Encarnacao v. Phase Forward Inc.*,
     No. CV-11-05090 ODW (PLA), 2012 WL 404971 (C.D. Ca. Feb. 7, 2012) ................ 5

*Fulkerson v. MHC Operating Ltd.*, No. Civ. A. 01C-07-020,
     2002 WL 32067510 (Del. Super. June 18, 2002) .......................................................... 8

*Grace Holdings LP v. Sunshine Min. & Refining Co.*,
     901 F. Supp. 853 (D. Del. 1995) ................................................................................... 3

*Grunstein v. Silva*,
     No. 3932-VCN, 2009 WL 4698541 (Del. Ch. Dec. 8, 2009). ....................................... 6

*Kuroda v. SPJS Holdings, L.L.C.*,
     971 A.2d 872 (Del. Ch. 2009) ................................................................................... 6, 8

*Lee ex rel. B.L. v. Picture People, Inc.*,
     No. K10C-07-002 (RBY), 2012 WL 1415471 (Del. Super. March 19, 2012) .............. 7

*Medimmune, Inc. v. Genentech, Inc.*,
     549 U.S. 118 (2007) ...................................................................................................... 2

*Moore Corp. Ltd. v. Wallace Computer Services, Inc.*,
     898 F. Supp. 1089 (D. Del. 1995) ................................................................................. 3

*Mut. Life Ins. Co. of N.Y. v. Phinney*,
     178 U.S. 3272 (1900) .................................................................................................... 6

*Nieves v. All Star Titles, Inc.*, No. 10C-03-191 PLA,
   2010 WL 2977966 (Del. Super. July 27, 2010) .................................................................. 7

*PHL Variable Insurance Company v. Price Dawe 2006 Insurance Trust*,
   28 A.3d 1069 (Del. 2011) ............................................................................................. 4, 9

*Pinkert v. John J. Olivieri, P.A.*, No. CIV. A. 99-380-SLR,
   2001 WL 641737 (D. Del. May 24, 2001) ........................................................................ 5

*Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers,
   Local Union No. 66*, 580 F.3d 185 (3d Cir. 2009) ............................................................. 2

*Preiser v. Newkirk,*
   422 U.S. 395 (1975) ......................................................................................................... 2

*Sanders v. Apple Inc.*,
   672 F.Supp.2d 978 (N.D. Cal. 2009) ................................................................................ 6

*Step-Saver Data Systems, Inc. v. Wyse Tech.*,
   912 F.2d 643 (3d Cir.1990) ........................................................................................... 2, 3

*Sykes v. Joseph O'Neal & Sons Auctioneers & Appraisers*,
   No. Civ. A. 07-01-076, 2009 WL 2449259 (Del. Com. Pl. Aug. 11, 2009) ....................... 8

**Statutes**

6 Del. C. § 2512 ............................................................................................................................ 7

I.     INTRODUCTION

The Counterclaim filed by ESF QIF Trust, by and through its trustee, Deutsche Bank Trust Company Delaware (the "Trust") [D.I. 8] is a thinly veiled attempt by an undisclosed life settlement investor to lock in profits through an advisory opinion from this Court. The Counterclaim is wholly reliant on the premise that Phoenix has an undisclosed intent to deny claims when insureds die, then to seek a judicial declaration that the policy in question is void, and finally to request judicial permission to retain policy premiums received. Yet, the premise cannot sustain the claims asserted for three independent reasons: 1) no Policy insured has died; as such, the Trust seeks a mere advisory opinion as to the parties' rights should a Policy be in force when its insured dies; 2) Phoenix has no control over whether a Policy is void for lack of insurable interest; insurable interest is measured at the time of issuance; and 3) Phoenix has made no representations regarding an intent to deny claims or contest the validity of a Policy; the Trust's entire theory is based simply on its belief as to what Phoenix's intent may be.

In its Opposition to Phoenix's Motion to Dismiss ("Opposition") [D.I. 15], the Trust asserts that Phoenix "plans or is likely" to assert that the Unrelated Policies are void because (a) according to the Trust, Steven Lockwood and/or Jonathon Berck had some involvement with roughly half of the Unrelated Policies, (b) four years ago, Phoenix brought lawsuits related to policies involving Lockwood, and (c) Phoenix has been party to a scattering of litigation since. The Trust asserts that these factors have soured the market's appetite to purchase the Unrelated Policies and requests that this Court declare that the Unrelated Policies are valid to assuage potential investors' concerns. This is a classic example of an advisory opinion. The Trust's other claims similarly fail due to the lack of an actionable misrepresentation or breach.

## II.     ARGUMENT

**A.     The Trust is Not Entitled to An Advisory Opinion**

"Article III of the Constitution limits the 'judicial power' of the United States to the adjudication of 'Cases' or 'Controversies.'  Courts enforce this requirement through several justiciability doctrines that 'cluster about Article III.'  They include standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009) (citations omitted).  As noted by the Trust, the Third Circuit outlined the ripeness test in *Step-Saver Data Systems, Inc. v. Wyse Tech*.  912 F.2d 643, 646 (3d Cir.1990).[1]

At its essence, the investors behind the Trust worry that they might have invested in a series of illegal life insurance transactions.  Fearful that the spotlight of judicial scrutiny may one day fall on what amounts to a wager on human life, the Trust seeks an advisory opinion from this Court.  *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975) (references omitted); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (references omitted) ("[T]here [must be] a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").  The Trust does not allege that Phoenix has taken or threatened any action with respect to the Unrelated Policies.  Instead, the Trust alleges only that Phoenix has an undisclosed intent to do so in the future and on that basis alone seeks a declaration that the Unrelated Policies are valid and that Phoenix must pay death benefits when the insureds die.  The Trust makes vague allegations about Lockwood's and

---

[1] The Trust implies that cases cited by Phoenix predating *Step-Saver* are no longer authoritative. Opposition at 17.  Such is not the case.  *Step-Saver* did not represent a change in the law; rather, the Third Circuit simply gleaned from prior decisions (some, the same cases cited by Phoenix) what it considered the most important principles of ripeness: adversity of interests, conclusiveness of judicial judgont, and utility of judgment.

2

Berck's involvement in some of the Policies (though it does not identify which ones) and asserts that a justiciable controversy exists regarding the validity of the Policies.

The Trust is mistaken. Under the three factors set forth in *Step-Saver*, the case is unripe.

- Adversity of Interests: The Trust states that the Unrelated Policies are valid. Phoenix is not alleged to have taken a position to the contrary. The Trust asserts that Phoenix's failure to take a position on the issue in the Motion to Dismiss is evidence of an ongoing dispute. This is a complete red-herring as it would be inappropriate for Phoenix to state such an opinion in a 12(b)(6) motion. Moreover, Phoenix's belief regarding the validity of each Unrelated Policy is irrelevant. Either the Policies are valid or they are void, and, whatever the status, it is a result of events that transpired during contract formation. The Trust acknowledges that these events all took place years ago. Unless Phoenix takes an adverse position regarding the Policies, no actual case or controversy exists.

- Conclusiveness: The Trust argues it can side-step the contingencies raised in Phoenix's Motion by asserting that it is asking for a conclusive declaration. However, a "court must consider whether judicial action at the present time would amount to more than an advisory opinion based on a hypothetical set of facts." *Moore Corp. Ltd. v. Wallace Computer Services, Inc.*, 898 F. Supp. 1089, 1097 (D. Del. 1995). What the Trust seeks is a declaration that if a set of hypotheticals occurs, then a contingency will happen. This is not a conclusive result.

- Utility: The Trust confuses legal utility with investment utility. *See Grace Holdings LP v. Sunshine Min. & Refining Co.*, 901 F. Supp. 853, 860 (D. Del. 1995) (holding that defendant's refusal to take a position as to whether it will redeem the plaintiff's preferred stock does not constitute a present injury necessary to create a justiciable controversy).

1. ***CSSEL Bare Trust* is Inapposite**

The Trust contends that its declaratory judgment counterclaim regarding the Unrelated Policies is ripe, even though Phoenix has not taken any action on the Unrelated Policies, because "future STOLI disputes between the Trust and Phoenix are imminent and real." Opposition at 13. The Trust mistakenly relies upon *CSSEL Bare Trust v. Phoenix Life Insurance Company* and New York law in making this argument. *See id.* at 9-11.

*CSSEL Bare Trust*, however, was a New York state trial court ruling, decided under New York procedural and substantive law, and involving unique circumstances. *See CSSEL Bare*

3

*Trust v. Phoenix Life Ins. Co.*, No 601002/09, 2011 WL 2941357 (N.Y. Sup. Ct. July 5, 2011). As the Delaware Supreme Court noted, New York insurance law is in many respects unique, especially as to contestability clauses and insurable interest requirements, which were central to the court's decision in *CSSEL Bare Trust*. *PHL Variable Insurance Company v. Price Dawe 2006 Insurance Trust*, 28 A.3d 1069, 1075 (Del. 2011). This Court is not bound by a New York trial court's decision applying inapplicable law to an inapplicable set of facts.

  **2. The Counterclaim Fails to Allege Sufficient Facts that the Policies are Valid**

Even if a justiciable controversy existed, the Trust fails to set forth facts that, if true, would entitle it to a declaration that the Policies are valid. In an unabashed attempt to limit the Delaware Supreme Court's holding in *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*,[2] the Trust asserts that the only fact necessary to determine the existence of an insurable interest is that the insured paid the initial policy premiums. The Trust goes so far as to contend that the facts regarding how the Trust came to own the Unrelated Policies are irrelevant. Opposition at 18. Yet, the Delaware Supreme Court charged courts with "scrutiniz[ing] the circumstances under which the policy was issued" when examining whether an insurable interest exists. *Dawe*, 28 A.3d at 1076. *Dawe* requires courts to look past mere "technical compliance" in determining the existence of an insurable interest. *See id.* at 1078. The identity of the premium payor is not dispositive to determining whether an insurable interest exists. *Id.* The requirement that courts scrutinize the so-called "laundry list" of circumstances that led to a policy's creation is exactly what differentiates Delaware law from New York law, as set forth in *Kramer v. Phoenix Life Insurance Company*, and relied upon in *CSSEL Bare Trust*. *Id.*

---

[2] *Id.*

**B.      The Trust's Common Law and Statutory Claims Fail**

The Trust bases its common law and statutory claims on a contention that Phoenix (1) encouraged brokers to place STOLI policies, (2) tracked suspected STOLI policies on a spreadsheet, and (3) has filed lawsuits seeking to void policies for lack of insurable interest. Even if true, the allegations give rise to no liability, as the Trust points to no misrepresentation by Phoenix, and cannot establish that Phoenix concealed anything from the Trust. Further, as noted in the Motion, the Trust failed to allege fraud with requisite particularity.

**1.      The Trust Fails to Allege a Misrepresentation**

The Trust cannot establish the most basic elements of fraud or negligent misrepresentation. The Trust asserts that it purchased the Policies in reliance on a belief that the Policies were valid. Opposition at 5, 24. The Trust admits that it did not purchase the Policies from Phoenix. The Trust does not allege that Phoenix made any representations in connection with the Trust's purchase of the Policies.

The Trust also asserts that Phoenix induced it to pay premiums even though Phoenix does not intend to pay claims. *Id.* at 24. To the extent Phoenix denies a claim that it is legally obligated to pay, it will be Phoenix's breach of contract that causes the Trust's damages. *See Pinkert v. John J. Olivieri, P.A.*, No. CIV. A. 99-380-SLR, 2001 WL 641737, at *5 (D. Del. May 24, 2001) ("A breach of contract claim cannot be bootstrapped into a fraud claim merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intended to perform." (internal quotations omitted)). Of course, as none of the insureds have died, this is entirely speculative. Unless and until a breach occurs, the Trust has not suffered damages.

The Trust also alleges that Phoenix fraudulently concealed a plan to deny hypothetical claims under the Policies. Opposition at 3, 22. The Trust couches this as a fraud claim, but it is,

5

at best, either a representation regarding future performance or a claim for anticipatory repudiation of a contract. Representations regarding future performance are non-actionable. *See, e.g.*, *Grunstein v. Silva*, No. 3932-VCN, 2009 WL 4698541, at *13 (Del. Ch. Dec. 8, 2009). Moreover, the Trust does not allege facts establishing the central element of a fraudulent concealment claim—a duty of disclosure obligating Phoenix to disclose any alleged secret intent to deny death claims. *See, e.g.*, *Chiarella v. U.S.*, 445 U.S. 222, 227–28 (1980) ("There must be a duty to disclose, however, for there to be a claim of fraud for failure to disclose.").

Further, Delaware law does not permit tort recovery for a breach of contract, reasoning that such expansive recovery would unjustifiably burden business interests. *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009) ("Where, however, the plaintiff's claim arises solely from a breach of contract, the plaintiff 'generally must sue in contract, and not in tort.'"). Here, the Trust alleges no non-economic losses in connection with its fraud claim and, indeed, it has none. Thus, it has not alleged a cognizable tort. To the extent Phoenix intends to—and actually does—breach the Policies, the Trust may pursue its contractual remedies.

Moreover, even if the Trust alleged a representation regarding the Policies' validity, as the Trust does not contend that any of the Policies are void, it appears that the Trust is alleging that Phoenix misrepresented <u>Phoenix's belief</u> concerning the Policies' validity. This is the very definition of a non-actionable legal opinion. *See Mut. Life Ins. Co. of N.Y. v. Phinney*, 178 U.S. 327, 328–42 (1900) (statement by insurance agent that policy had lapsed where, under applicable New York statute it had not, could not form basis of fraud claim because parties are "presumed, as a matter of law, to know [statutes'] legal effect and operation").

### 2. The Trust Fails to State A Claim Under the Delaware Consumer Fraud Act

The Delaware Consumer Fraud Act ("CFA") applies only to fraudulent conduct occurring in Delaware. *See* 6 Del. C. § 2512. The Trust claims that it meets this requirement, essentially because the Policies were issued to Delaware statutory trusts; thus, any fraudulent representations were made to Delaware trusts. *See* Opposition at 21. The mere fact that the injured parties are located in Delaware, however, is not sufficient to constitute a "nexus" to Delaware under the CFA. *See Nieves v. All Star Titles, Inc.*, No. 10C-03-191 PLA, 2010 WL 2977966, at *5 (Del. Super. July 27, 2010). The court in *Nieves* dismissed the plaintiff's CFA claim, even though he was a Delaware resident and the settlement involved property in Delaware. *Id.* The court focused instead on the defendant's location in Maryland and that the defendant's conduct occurred in Maryland. *Id.* The court concluded that the plaintiff failed to allege facts to support that the defendant "provided services or made any representations or omissions in Delaware." *Id.* Similarly, Phoenix is a Connecticut company with its principal place of business in Connecticut. Counterclaim at ¶ 9. Any alleged conduct by Phoenix in developing a fraudulent plan occurred in Connecticut. That the subsequent harm the Trust claims it suffered occurred in Delaware has no bearing on the Court's CFA analysis.

Moreover, the Trust wrongly claims that post-sale misrepresentations can support a CFA claim. Opposition at 22. The single case to which it cites is contradicted by the great weight of Delaware law. *See, e.g., Lee ex rel. B.L. v. Picture People, Inc.*, No. K10C-07-002 (RBY), 2012 WL 1415471, at *9 (Del. Super. March 19, 2012) (finding that statements made after signing of contract were "post-sale" and thus not "in connection with the sale or advertisement of the merchandise"); *Ayers v. Quillen*, No. Civ. A. 03C-02-004-RFS, 2004 WL 1965866, at *6 (Del. Super. June 30, 2004) ("[P]ost-sale representations do not constitute consumer fraud under the

7

[CFA]."); *Fulkerson v. MHC Operating Ltd.*, No. Civ. A. 01C-07-020, 2002 WL 32067510, at *3 (Del. Super. June 18, 2002) (same); *Sykes v. Joseph O'Neal & Sons Auctioneers & Appraisers*, No. Civ. A. 07-01-076, 2009 WL 2449259, at *6 (Del. Com. Pl. Aug. 11, 2009) (same). The conduct cited by the Trust, such as Phoenix's alleged misrepresentations regarding its intention to "comply with its contractual obligations" each time it accepted premiums, occurred after the Policies' issuance. *See* Opposition at 21. Accordingly, given the above, this Court should dismiss the Trust's CFA counterclaim.

### 3. The Trust Fails to Allege Facts Necessary to Support Claims for Bad Faith and Breach of the Duty of Good Faith and Fair Dealing

A breach of the duty of good faith and fair dealing only arises when there is a death claim; as such, it does not apply to the Unrelated Policies. *See Coleman Dupont Homsey v. Vigilant Ins. Co.,* 496 F.Supp.2d 433, 437 (D. Del. 2007). Moreover, a claim for breach of the duty of good faith and fair dealing requires the invocation of a specific implied contractual obligation that *does not override the express terms of the contract itself*. *Kuroda*, 971 A.2d at 888. The Trust claims that Phoenix's alleged failure to "investigate the Trust's claims and pay the contractually due death benefits" is a breach of its duty of good faith and fair dealing to the Trust. Opposition at 25. The duty to investigate claims and pay benefits is not an implied obligation; it is an express obligation arising directly from the contract. Accordingly, this Court should grant Phoenix's Motion. *See Kuroda*, 971 A.2d at 888 ("To the extent that Kuroda's implied covenant is premised on the failure of defendants to pay money due under the contract, the claim must fail because the express terms of the contract will control such a claim.").

The Trust misstates the type of conduct that is liable in a bad faith insurance claim. As stated in *ConAgra Foods, Inc. v. Lexington Insurance Company*, cited in the Opposition, "[a] bad faith breach of insurance claim requires the insurer to have failed in bad faith to investigate or

8

process the claim or to have delayed in its payment obligation." No. 09C-02170 FSS, 2010 WL 663746, at *1 (Del. Super. Jan. 21, 2010). The Trust fails to make any such assertion, claiming instead that Phoenix's alleged "fraudulent scheme" is in and of itself bad faith. *See* Opposition at 25-26. As such, the Trust fails to state a claim upon which relief can be granted.

Finally, the Trust conflates its own arguments regarding bad faith and breach of duty of good faith and fair dealing. It claims that Phoenix cites *Penn Mutual Life Insurance Company v. Barbara Glasser 2007 Insurance Trust* to support the contention that initiation of an action for declaratory judgment constitutes bad faith. Opposition at 26. This is not the case. Phoenix relies upon *Glasser* as precedence that a declaratory judgment action does not constitute a breach of duty of good faith and fair dealing, a separate cause of action from bad faith. Motion at 24-25.

### 4. Courts Cannot Enforce Illegal Contracts

The Trust asks for an order requiring, under theories of equitable estoppel and waiver, enforcement of the Policies, regardless of validity. Yet, contracts lacking an insurable interest cannot be enforced. *See, e.g.*, *Dawe*, 28 A.3d at 1067 ("A court may never enforce agreements void *ab initio,* no matter what the intentions of the parties."). As such, these claims fail.

### 5. The Trust Fails to Allege Damages

The Trust claims it has suffered damages, and will continue to suffer damages, as a result of Phoenix's actions, due to a loss of market value. Any claim that the market's devaluation of the Policies is caused by Phoenix's secret intent is a vassal argument. The original Policy owners contracted with Phoenix for insurance coverage, not for an assurance as to the Policies' market value. Phoenix is not a guarantor of secondary market value and is not alleged to have any obligation to support the Policies' value on the secondary market. Phoenix's alleged secret plan, not disclosed to anyone nor affirmatively represented to the Trust, simply could not

proximately cause any injury, and the assertion that it could is far too nebulous to be a proximate cause of any fluctuation within the market. Finally, whether it relates to paying premiums or the market's valuation of the Policies, to the extent that the Trust's damages stand and fall based on whether the Policies are void or valid, their "damages" are caused not by Phoenix, but by the inherent legal condition of the Policies themselves at the time of issuance.

### III. CONCLUSION

The Trust asks this Court to issue a guaranty that if a life insurance policy happens to be in force when an insured dies that Phoenix will pay the death benefits, regardless of whether the policy is legally void. All of this to avoid a secret scheme by Phoenix to look to courts for guidance if questions arise regarding a Policy's validity. Because no insured has died, because nothing Phoenix does today can impact whether the Policies are valid or void, and because Phoenix cannot be liable for any secret plan to look to the Courts for guidance on whether a policy might be valid or void, this Court should dismiss the Trust's Counterclaims noted above.

### IV. PRAYER

For the foregoing reasons, Phoenix respectfully requests that the Court dismiss the Trust's Counterclaims for declaratory judgment, bad faith, violations of the Delaware Consumer Fraud Act, fraud, negligent misrepresentation, breach of the duty of good faith and fair dealing, and promissory estoppel, and grant Phoenix such other relief to which it may be justly entitled.

Dated: August 6, 2012                    Respectfully submitted,

          */s/ Keith A. Walter*
          Keith A. Walter (#4157)
          Daniel Attaway (#5130)
          CONNOLLY BOVE LODGE & HUTZ LLP
          The Nemours Building
          1007 N. Orange Street
          P.O. Box 2207
          Wilmington, DE 19899
          Telephone: (302) 658-9141
          Facsimile: (302) 658-5614
          Email: KWalterJr@cblh.com

          Thomas F.A. Hetherington
          Jarrett E. Ganer
          EDISON, MCDOWELL & HETHERINGTON LLP
          Phoenix Tower
          3200 Southwest Freeway, Suite 2100
          Houston, Texas 77027
          Telephone: (713) 337-5580

          *Counsel for Plaintiff/Counterclaim-Defendant*
          *PHL Variable Insurance Company*

4947746_1