IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PHL VARIABLE INSURANCE COMPANY,

Plaintiff/Counterclaim Defendant,

v.

Civ. No. 12-319-LPS

ESF QIF TRUST, by and through its trustee, DEUTSCHE BANK TRUST COMPANY,

Defendant/Counterclaim Plaintiff.

---

Keith A Walter, Jr., Esquire, NOVAK DRUCE CONNOLLY BOVE + QUIGG LLP, Wilmington, DE.

Thomas F.A. Hetherington, Esquire and Jarret E. Ganer, Esquire, EDISON, MCDOWELL & HETHERINGTON LLP, Houston, TX.

Attorneys for Plaintiff/Counterclaim Defendant.

Joseph J. Farnan, Jr., Esquire and Brian E. Farnan Esquire, FARNAN LLP, Wilmington, DE.

Steven G. Sklaver, Esquire, Matthew R. Berry, Esquire, and Brian M. Gillett, Esquire, SUSMAN GODFREY L.L.P., Los Angeles, CA, Seattle, WA, and Houston, TX.

Attorneys for Defendant/Counterclaim Plaintiff.

---

**MEMORANDUM OPINION**

December 30, 2013
Wilmington, Delaware

**STARK, U.S. District Judge:**

Before the Court is a motion by Plaintiff/Counterclaim Defendant PHL Variable Insurance Company ("Phoenix") to dismiss the counterclaims of Defendant/Counterclaim Plaintiff ESF QIF Trust ("ESF Trust" or "the Trust"). (D.I. 12) The Court heard oral argument on November 8, 2012. (*See* Motion Hr'g Tr., November 8, 2012 (D.I. 28) (hereinafter "Tr.") The Court will grant in part and deny in part Phoenix's motion to dismiss the counterclaims.

## I. BACKGROUND[1]

Phoenix is a Connecticut insurance company with a principal place of business in Hartford Connecticut. (D.I. 1 at 2) ESF Trust is a Delaware statutory trust formed pursuant to the Delaware Statutory Trust Act, 12 Del. C. §§ 3801, *et seq*. (*Id.*)

On March 15, 2012, Phoenix filed a declaratory judgment action against ESF Trust pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57. (*Id.*) In its complaint, Phoenix asks the Court to declare as void *ab initio* a $10 million life insurance policy – number 97519213 ("the Griggs Policy") – insuring the life of Roberta Griggs ("Mrs. Griggs"). The insured, Mrs. Griggs, died on October 14, 2011. (D.I. 1 at 9)

Phoenix's complaint alleges that ESF Trust acquired the Griggs Policy (and other policies) as part of a stranger originated life insurance ("STOLI") arrangement. (*Id.* at 1-2) In a "STOLI" arrangement, speculators collaborate with an individual or individuals to purchase expensive life insurance polices and then sell some or all of the death benefit to investors on a secondary market. (*Id.* at 2-5) In order to "maximize rates of return on investments," STOLI

[1]For purposes of the pending motion, the facts as alleged in the Trust's counterclaims are taken as true. Other background facts not presently in dispute are derived from Phoenix's complaint (D.I. 1; *see also* D.I. 8 at 1-2).

speculators engage financially qualified, elderly individuals – with limited expected life spans – to obtain multi-million dollar life insurance policies in the individual's name. (*Id.* at 5) The insured may then designate as the beneficiary of the policy some type of third-party entity, which may then transfer the policy to speculators. (*Id.*)

In addition to filing an Answer to Phoenix's complaint, the Trust filed seven counterclaims. (*See* D.I. 8 at 31-40) Generally, the counterclaims relate to fourteen additional life insurance policies (the "Additional Policies" and, with the Griggs Policy, the "Policies") issued by Phoenix and purportedly owned by the Trust. According to the Trust, the combined value of the life insurance policies is $97.5 million. (*Id.* at 10)

Specifically, the Trust sets forth the following counterclaims:

(1) breach of contract and bad faith with respect to the Griggs Policy;

(2) declaratory judgment that the Griggs Policy as well as the fourteen Additional Policies are valid, and in particular "a judicial declaration that (a) Phoenix is liable to pay a claim thereunder on each of the Policies upon the occurrence of the Policies' maturity event, and that (b) Phoenix is estopped from challenging the Polices as void *ab initio* and/or that Phoenix has waived its right to challenge the Policies as void *ab initio*" (D.I. 8 ¶ 51);

(3) violation of the Delaware Consumer Fraud Act, 6 Del. C. § 2513 et seq. ("DCFA");

(4) common law fraud;

(5) common law negligent misrepresentation;

(6) breach of the duty of good faith and fair dealing; and

(7) promissory estoppel.

Phoenix opposes "expand[ing] this action to include fourteen additional life insurance policies" and, therefore, moves to dismiss the counterclaims due to various purported deficiencies. (D.I. 13 at 1)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation

that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

**B. Rule 9(b)**

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purpose of Rule 9(b) is to provide defendants with notice of the precise nature of the claim against them, not to test the factual allegations of the claim. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984). Although date, place, and time allegations may fulfill the requirement of pleading with particularity, these types of allegations are not required to satisfy Rule 9(b), so long as the circumstances of the alleged fraud are pled sufficiently "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.*

**III. DISCUSSION**

**A. Portions of the Motion Are Not Contested**

The Trust's second counterclaim asks the Court to find (among other things) that the Griggs Policy is affirmatively supported by an insurable interest and, thus, is "valid." (D.I. 8 at

33) Phoenix moves to dismiss this counterclaim regarding the validity of the Griggs Policy on the bases that (1) it is redundant, since the resolution of Phoenix's declaratory judgment invalidity claim will decide whether the Griggs Policy is null and void, and (2) Phoenix's counterclaim fails to state a claim upon which relief can be granted. (D.I. 13 at 10) During briefing on the motion, the Trust indicated it was agreeable to dismissing its declaratory judgment counterclaim with respect to the Griggs Policy on the grounds of redundancy. (D.I. 15 at 18 n.12; *see also* Tr. at 17) Accordingly, the Court will dismiss this counterclaim to the extent it seeks relief with respect to the Griggs Policy.

The Trust's third counterclaim alleges Phoenix violated the Delaware Consumer Fraud Act ("DCFA"). (D.I. 8 at 34-36) Phoenix moved to dismiss the Trust's DCFA claim on the bases that (1) the DCFA cannot be applied extraterritorially, and (2) wrongful conduct was not adequately plead. (D.I. 13 at 20-21) At the November 2012 hearing, the Trust expressed its intent to "withdraw and dismiss without prejudice" its DCFA claim. (Tr. at 17) Accordingly, the Court will dismiss this counterclaim.

**B. Declaratory Judgment**

In its second counterclaim, the Trust seeks a declaration that (a) Phoenix is liable to pay claims on the fourteen Additional Policies purported to be owned by the Trust and (b) Phoenix is estopped from challenging these Additional Policies as void *ab initio* or, alternatively, that Phoenix has waived its right to challenge these Additional Policies as void *ab initio*. (D.I. 8 at 33-34) Phoenix moves to dismiss this counterclaim on three grounds. First, Phoenix contends that this Court lacks subject matter jurisdiction over the counterclaim because the Trust "failed to set forth an actual controversy ripe for judicial determination." (D.I. 13 at 10) Next, Phoenix

argues that, even if there is an actual, ripe controversy, the Trust has failed to set forth facts sufficient to support a declaration that the Additional Policies are valid. (*Id.* at 20) Finally, Phoenix asserts that it cannot be estopped from challenging the validity of the Additional Policies because the Court cannot enforce an illegal contract. (*Id.* at 18) The Court addresses each of these issues below.

**1. Subject matter jurisdiction**

The Trust seeks a declaration from this Court that, if and when a claim is eventually made to collect the proceeds of any of the Additional Policies, Phoenix will have to pay such a claim and will not be able to challenge the Additional Policies as void *ab initio*. The Trust seeks such a declaration now because Delaware law permits a provider of a life insurance policy, such as Phoenix, to challenge such a policy based on lack of an "insurable interest" even after the contestability period has run, to request that a court void the life insurance policy on the grounds that it is against public policy. *See PHL Variable Ins. Co. v. Price Dawe 2006 Inusrance Trust*, 28 A.3d 1059, 1065 (Del. Sup. 2011).[2] Phoenix argues that the Court lacks subject matter jurisdiction to provide the requested declaratory relief because there is presently an absence of an actual controversy ripe for adjudication with respect to the fourteen Additional Policies.

Pursuant to 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *See also* Fed. Civ. Proc. 57. Determining whether declaratory judgment jurisdiction exists in a

[2]"An incontestability clause is a contractual provision wherein the insurer agrees that, after a policy has been in force for a given period of time, it will not contest the policy based on misrepresentations in the insurance application." *PHL*, 28 A.3d at 1065.

particular case requires consideration of the "facts alleged, under all the circumstances," in order to evaluate whether they "show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted). The Court must evaluate "the adversity of interest of the parties, the conclusiveness of issuing [a] judicial [declaratory] judgment, and the practical help, or utility, of that judgment." *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 647 (3d. Cir. 1990).

Here, the parties dispute whether there is sufficient adversity between them to create an actual controversy at this time. (*See* D.I. 13 at 15; D.I. 15 at 13-15; D.I. 28 at 7-9) The Trust alleges in its counterclaim that "after knowingly mass-issuing STOLI policies . . . and collecting hefty premiums . . ., Phoenix [has] regularly and systematically [sought] to rescind life insurance policies that are similar to" the fourteen Additional Policies. (D.I. 8 at 26) Consequently, the Trust alleges that it has suffered and is continuing to suffer harm, in the form of "its inability to re-sell the policies and overpayment at acquisition – due to Phoenix's business practices alleged in the counterclaims." (D.I. 15 at 12) Phoenix counters that it has not taken any action with respect to the Additional Policies, so the harm alleged by the Trust is "self-imposed." (D.I. 13 at 15) Moreover, the fourteen Additional Policies have yet to mature, as the insureds are still alive. (D.I. 8 at 19-32)

The Court concludes that there is sufficient adversity between the parties for there to be, presently, an actual, ripe controversy between the Trust and Phoenix with regard to the fourteen Additional Policies. The Trust's counterclaim adequately alleges a present injury: specifically,

the harm to the Trust's assets – i.e., the interests in the Additional Policies – which allegedly results from Phoenix's pattern of litigating the validity of essentially identical policies it has issued, and doing so only after it has collected large premiums. (*See* D.I. 8 at 26-27, 30) (citing *Wall Street Journal*) The Trust expressly alleges that the fourteen Additional Policies share "many of the same attributes as policies that Phoenix has challenged in the past, in this District and elsewhere." (*Id.* at 28; *see also* Tr. at 15 (Phoenix does not object to Court taking judicial notice of similar actions filed by Phoenix); C.A. No. 12-317 D.I. 15 at 6 n.2) It appears that there have been at least 25 lawsuits across the country raising the same issue, including at least two others that involve Phoenix suing one or more of the same individuals participating on the Trust's side of the instant action. (*See* Tr. at 18; *id.* at 19 ("[T]hey've sued us twice, they've sued the participants in our policy: Steven Lockwood, who is the broker on a lot of the polices; John Berck, the trustee; Lockwood Pension Services."); *id.* at 20, 26 ("What is unique about this case are these factors about the same participants they have sued before for RICO violations involving STOLI . . . .")[3]

It is undisputed that, absent a declaration of rights in the context of the instant action, Phoenix will have the ability – at the time a claim is made on the Additional Policies – to challenge the Additional Policies as void *ab initio* due to lack of an insurable interest. *See Dawe*, 28 A.3d at 1065. Moreover, Phoenix is, in the instant action, challenging the validity of the

[3]There appears to be so much litigation involving Phoenix that, perhaps unsurprisingly, not all courts addressing the resulting issues are reaching the same conclusions. *See Mosier v. Phoenix Life Ins. Co.*, CV 12-227 PSG, C.D. Cal. Aug. 7, 2012 [D.I. 18 Ex. A] ("[T]he Court concludes that in so far as the Receiver's claims are based on the assertion that Phoenix plans to deny coverage under the Policies if and when they become due, absent an unequivocal statement by Phoenix to this effect, such allegations are not ripe for review.") (granting motion to dismiss without prejudice and with leave to amend).

Griggs Policy, and the Trust does not dispute that the challenge asserted by Phoenix presents an actual, ripe controversy. *See generally Household Int'l v. Westchester Fire Inc. Co.*, 286 F.Supp.2d 369, 376 (D. Del. 2003) ("[D]eclaratory relief is available to a plaintiff insurance company when it seeks to define its rights and obligations regarding one of its customers."). Under the circumstances as alleged in the Trust's counterclaim, the Court concludes that there is also an actual, ripe controversy when the Trust – as owner of nearly-identical Additional Policies also issued by Phoenix – seeks to prevent Phoenix from raising the same challenge to the validity of these Additional Policies. *See generally Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the [ripeness] inquiry is the same in either case.").

Largely the same issue was recently addressed by a New York State Court, which found a ripe dispute. In *CSSEL Bare Trust v. Phoenix Life Insurance Company*, 2011 WL 2941357 (N.Y. Sup. June 23, 2011), the plaintiff sought a declaratory judgment that Phoenix was liable to pay a claim under a life insurance policy upon the occurrence of a maturity event. The Court denied Phoenix's motion to dismiss for lack of a ripe, justiciable controversy. *See id. CSSEL* stated, among other things, that "[t]he marketability of the plaintiff's property, the subject life insurance policy, has been destroyed by defendant's refusal to honor similar policies . . . that involve an alleged stranger-originated policy scheme with a trust structure similar to that used herein. . . . The likelihood that Phoenix will contest the policy upon the insured's death substantially diminishes the value of the policy, if it does not destroy the market entirely." *Id.* (internal footnote omitted). *CSSEL* provides persuasive support for the Court's conclusion in the

instant case.[4]

Furthermore, a decision in the instant action as to whether the fourteen Additional Policies are supported by an insurable interest would define and clarify the rights the parties will have pursuant to the Additional Policies upon the occurrence of maturity events. Likewise, such a decision would have an immediate impact on the parties. Should the Trust prevail, the alleged marketability injury would be cured. Should Phoenix prevail, the Additional Policies will be void and the Trust may attempt to cease paying premiums on them.

A final factor further supporting a finding that ***now*** is the appropriate time to resolve issues as to insurable interest is the nature of the contractual relationship between the parties. Given that the context is a life insurance policy, the maturity event that will trigger Phoenix's obligation to pay the proceeds of the policy is the ***death*** of the insured. During the time that passes between the formation of the life insurance contract and the maturity event, evidence may be lost, including witnesses' memories. By definition, the insured will not be alive for any post-maturity event litigation. These practical realities may make it much more difficult for both sides to have a fair opportunity to litigate their dispute[5] – if such a dispute is not considered ripe until

---

[4]The Court agrees with Phoenix's contention that *CSSEL* is not binding, but disagrees with its contention that *CSSEL* is "inapposite" and "involv[ed] unique circumstances." (D.I. 17 at 3-4)

[5]The parties seem to be in agreement on this point, although they disagree as to whether it has implications for the ripeness issue the Court must decide. (*See* Tr. at 23 (Trust's counsel: "[T]his is a unique case where all the facts exist. They're frozen in time in a box. The issue is was there an insurable interest at issuance five or six years ago? There are no further facts that can develop that will help that adjudication. But what makes this unique is actually the facts get worse, or the adjudication, the ability to adjudicate gets harder not just because memories fade over time but the insured dies."); *id.* at 35-36 (Phoenix's counsel: "With respect to the sort of passage of time argument, my client has the burden of proof to declare all of these policies are invalid and that they lacked an insurable interest. Letting time go past is not helpful to me. . . .

the occurrence of the maturity event.

Hence, the Court concludes that it has subject matter jurisdiction with respect to the Trust's counterclaim.

**2. Adequacy of pleadings**

Phoenix contends that, even if there is subject matter jurisdiction, the Trust's counterclaim must be dismissed because it fails to allege adequately a causal relationship between Phoenix's conduct and the Trust's injury. (D.I. 13 at 16-18) The Court concludes that the Trust's allegations are adequate to survive the motion to dismiss.

The Trust adequately alleges that Phoenix's pattern of litigation against similar life insurance policies has caused a present injury by diminishing the marketability, and hence the value, of the fourteen Additional Policies. (D.I. 8 at 10-12) In particular, citing the *Wall Street Journal*, the Trust alleges that Phoenix has disputed "7.6% of the face amount of claims that it received" in 2008. (*Id.* at 30) The Trust further pleads that it "incurred substantial damages as a result of Phoenix's wrongful conduct . . . [such as] costs and expenses associated with maintaining the Griggs policy and the costs and expenses of this litigation." (*Id.* at 37) While Phoenix argues that any potential market devaluation of the Griggs Policy and the Additional Policies is "far too nebulous to be a proximate cause of any fluctuation within the market" (D.I. 17 at 10), this is an issue on which evidence will have to be presented (*see* Tr. at 18-19). The counterclaim adequately pleads causation.

---

The passage of time makes it much harder for me to get rid of a policy than it does for them to keep one on the books."))

### 3. Waiver and estoppel

Phoenix contends that the Court cannot declare that Phoenix has waived its right to challenge the Griggs Policy and the Additional Policies, or declare that Phoenix is estopped from such a challenge, because the result would be against Delaware public policy, as it would mean the Court was enforcing an illegal contract. (D.I. 13 at 18; *see also* D.I. 8 at 32, 39) The Trust responds that even if the Griggs Policy and the Additional Policies are illegal, Phoenix is not immune from application of the doctrines of waiver and estoppel because Phoenix allegedly acted in bad faith. (D.I. 15 at 19-20)

The Court is not determining at this time whether the policies are illegal. Even assuming that they are, the issue of whether enforcement of them would be against public policy is a factual question bound up, at least in part, with the equities, including a consideration as to whether Phoenix has acted in bad faith. As the Trust has adequately alleged that Phoenix did, indeed, act in bad faith – including by collecting hefty premiums while harboring an undisclosed plan to challenge the policies and never pay claims on them – the Court will not dismiss the Trust's counterclaim.[6] *See* 17A Am. Jur. 2d *Contracts* § 309 ("It seems to be well established that a party to an illegal agreement may, under some circumstances, be estopped to assert its illegality as against an innocent third person who has become interested in the agreement or whose rights are affected by the agreement . . . ."); *Hammond v. Oregon & C.R. Co.*, 193 P. 457,

---

[6]Phoenix has not moved to dismiss the Trust's first counterclaim, to the extent it alleges breach of contract with respect to the Griggs Policy. Hence, the Trust's first counterclaim will proceed. However, Phoenix has moved to dismiss that portion of the first counterclaim that alleges bad faith. (*See* D.I. 13 at 26) The Court will deny this portion of Phoenix's motion; if Plaintiff proves its allegations, as the Court must assume for purposes of the motion it will, then it will prove Phoenix has acted in bad faith.

462-63 (Ore. 1920) ("[U]nless the parties are *in pari delicto* as well as *particeps criminis*, the courts, although the contract is illegal, will afford relief where equity requires it, to the more innocent party, even after the contract has been executed.").[7]

Accordingly, the Court will deny Phoenix's motion to dismiss the Trust's counterclaims.

### C. Fraud and Negligent Misrepresentation Claims

The Trust's fourth and fifth counterclaims allege that Phoenix fraudulently and negligently misrepresented its intent by not disclosing that it would challenge the Griggs Policy and Additional Policies, all in an effort to induce the Trust into paying millions of dollars in premiums. (*See* D.I. 8 at 36-38) Under Delaware law, the Trust's claims for fraud and negligent misrepresentation are adequately pled if they plead facts alleging that: (1) Phoenix made a false representation; (2) Phoenix knew the representation was false, or made the representation with reckless indifference to the truth; (3) Phoenix did so with an intent to induce the Trust to act or refrain from acting; (4) the Trust did act, or refrain from acting, in justifiable reliance on the Phoenix representation; and (5) the damage to the Trust resulted from such reliance. *See Schmeusser v. Schmeusser*, 559 A.2d 1294, 1297 (Del. 1989).

The Trust adequately alleges these elements. Phoenix allegedly made false representations that it viewed the Griggs Policy and the Additional Policies as legitimate life

---

[7]As Phoenix observes (*see* Tr. at 15), in *Dawe*, 28 A.3d at 1067, the Delaware Superior Court stated, broadly, "A court may never enforce agreements void *ab initio*, no matter what the intentions of the parties." However, as the Trust responds (*see* Tr. at 28-29), the issue was not squarely before *Dawe*, as it was in *Hammond*. In any event, even Phoenix acknowledges that, as a matter of equity, some relief must be available to the Trust in the event that, years from now, Phoenix acts on a now-undisclosed intent and refuses to pay a mature claim based on lack of an insurable interest. (*See* Tr. at 34-35) Under the circumstances, the Court believes the Delaware courts, if faced with the issue now before this Court, would agree with the *Hammond* analysis.

insurance policies, on which it would pay claims made upon a maturing event, all while secretly harboring a plan to challenge the enforceability of such policies and to refrain from paying claims. Phoenix allegedly knew at the time it issued the policies of its plan and, hence, that its representations to the contrary were false. Phoenix allegedly acted with an intent to induce the Trust into acquiring the policies and the intent to cause large premium payments to be made to Phoenix. The Trust allegedly relied on Phoenix's misrepresentations in choosing to pay the large premiums. And all of this has allegedly damaged the Trust, as the Trust still owns the policies but their value and marketability are reduced due to Phoenix's litigious conduct and Phoenix's plan to challenge the enforceability of the policies.

In pleading the alleged fraud, the Trust sets forth "the types of policies subject to the fraud ([D.I. 8] ¶¶ 4, 30), the names of agents who issued policies subject to the fraud (¶ 20), the existence of Phoenix's STOLI tracking spreadsheet that monitors the Trust (¶ 21), and corroborating sworn testimony from a former Phoenix life insurance producer (¶ 17). The Trust's counterclaim further alleges sufficient details to identify each of the policies, their face values, the premiums paid to date, and the premiums to be paid through the end of 2013 (¶ 23)." (D.I. 15 at 23) Phoenix is incorrect when it insists that the counterclaim contains "no details regarding when this plan was formulated, who formulated the plan, and how [ESF] Trust discovered the concealment." (D.I. 13 at 32)

Under Delaware law, a claim for negligent misrepresentation must plead: (1) a defendant who owes plaintiff a pecuniary duty; (2) failing to exercise reasonable care in communicating; (3) false information; (4) that is justifiably relied on by plaintiff; (5) resulting in pecuniary loss. *See Outdoor Technologies, Inc. v. Allfirst Fin., Inc.*, 2001 WL 541472, at *5 (Del. Super. Apr.

12, 2001). The Trust alleges that Phoenix violated its pecuniary duty when it concealed its internal policy/practice of intentionally not investigating the circumstances under which policies were issued in order to continue collecting premiums on policies that it either never intended to pay claims on or planned to challenge as void *ab initio*. (*See* D.I. 8 at 37) Here, for essentially the same reasons that the fraud elements are adequately pled, so, too, are the elements of negligent misrepresentation. *See generally* Restatement 2d Torts § 551.

In short, each of the necessary fraud and misrepresentation elements are alleged with adequate particularity, as required by Rule 9(b).[8]

**D. Good Faith and Fair Dealing**

The Trust's sixth counterclaim asserts a claim for breach of the implied covenant of good faith and fair dealing. The Trust contends that "Phoenix has breached its duty of good faith and fair dealing under the Griggs Policy by accepting premium payments from the Trust under false pretenses . . . ." (D.I. 8 at 39) Phoenix moves to dismiss this counterclaim on the basis that the duty it allegedly breached is an express term of the insurance contract. (D.I. 13 at 25) The Court agrees with Phoenix.

In *Penn Mutual Life Insurance v. Baraba Glasser 2007 Insurance Trust*, 2010 WL 3023420, at *4 (D. Del. July 30, 2010), this Court – relying on *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) – held that a party seeking to recover for breach of the implied covenant of good faith and fair dealing must "identify a specific implied contractual obligation . . . that has allegedly [been] violated." The Trust has failed to identify such an

---

[8]The Trust's pleading puts Phoenix "on notice of the precise misconduct with which [it is] charged." *Southco v. Penn Engineering & Mfg. Corp.*, 768 F. Supp. 2d 715, 720 (D. Del. 2011) (internal quotation marks omitted).

obligation. Rather, the Trust's contention is essentially that Phoenix has breached an express term of the contract, specifically its contractual obligation to pay the insurance proceeds to a beneficiary upon the occurrence of a maturity event. *Glasser* further held that "the mere initiation of a declaratory judgment action to determine rights and obligations under an insurance contract" is not necessarily "sufficient to state a claim for breach of the duty of good faith." *Id.* Additionally, there is no basis to conclude that the parties here agreed (or would have agreed) that Phoenix has a contractual obligation to inform the Trust that it intends to challenge the Policies for lack of an insurable interest, so the Court will not read such an additional condition into the contract. *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) (stating duty of good faith and fair dealing can "only be used conservatively to ensure the parties' reasonable expectations are fulfilled"); *id.* ("To the extent that Kuroda's implied covenant claim is premised on the failure of defendants to pay money due under the contract, the claim must fail because the express terms of the contract will control such a claim.").

Accordingly, the Court will dismiss this counterclaim.

**E. Promissory Estoppel**

Finally, Phoenix moves to dismiss the Trust's seventh counterclaim, for promissory estoppel. To plead a claim of promissory estoppel, a plaintiff must allege that: "(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise." *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000). For all of the same reasons already given, particularly in connection with respect to the adequacy of the fraud and negligent

misrepresentation claims, the Court concludes that the Trust has adequately alleged each of the elements of promissory estoppel. Phoenix's motion to dismiss this counterclaim will be denied.

## IV. CONCLUSION

For the reasons given above, the Court will grant in part and deny in part Phoenix's motion to dismiss the Trust's counterclaims. The Court will enter an appropriate Order.